UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**JENNIFER RUSSIAN,**

    *Plaintiff,*

       v.

**COMENITY CAPITAL BANK,
EXPERIAN INFORMATION
SOLUTIONS, INC.,**
*and* **MIDLAND CREDIT
MANAGEMENT, INC.,**

    *Defendants.*

Case No.:

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **Jennifer Russian** ("**Ms. Russian**,") by and through her attorneys, Seraph Legal, P.A., and complains of the Defendants, **Comenity Capital Bank** ("**Comenity**"), **Experian Information Solutions, Inc.** ("**Experian**"), and **Midland Credit Management, Inc.** ("**MCM**") (collectively, the "**Defendants**"), stating as follows:

## PRELIMINARY STATEMENT

1.    This is an action brought by Ms. Russian against the Defendants for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("**FCRA**"), and against MCM for violations of the *Fair Debt Collection Practices Act*, 15 U.S.C. § 2692, *et seq.* ("**FDCPA**").

Page **1** of **36**

## JURISDICTION

2.    Subject matter jurisdiction for Plaintiff's FCRA and FDCPA claims arises under 28 U.S.C. § 1331, as the FCRA and the FDCPA are federal statutes.

3.    The Defendants are subject to the jurisdiction of this Court pursuant to § 48.193, Fla. Stat. and Fed. R. Civ. P. 4(k).

4.    Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because the acts complained of were committed and/or caused by the Defendants in Polk County, which is within the Middle District of Florida.

## PARTIES

### Ms. Russian

5.    **Ms. Russian** is a natural person residing in the City of Winter Haven, Polk County, Florida.

6.    Ms. Russian is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c), and the FDCPA, 15 U.S.C. § 1692a(3).

### Comenity

7.    **Comenity** is a nationally chartered bank, with a principal business address of 12921 South Vista Station Blvd, Suite 400, Draper, UT 84020.

8.    Comenity's Utah Registered Agent is **CT Corporation System, 1108 E. South Union Ave., Midvale, UT 84047**.

**Experian**

9.      **Experian** is an Ohio corporation, with a principal business address of 475 Anton Blvd., Costa Mesa CA 92626.

10.     Experian is registered to conduct business in the State of Florida, where its registered agent is **CT Corporation System, 1200 South Pine Island Rd. Plantation, FL 33324**.

11.     Experian is a nationwide *Consumer Credit Reporting Agency* ("CRA") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that, for monetary fees, dues, and/or on a cooperative nonprofit basis, it regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses means or facilities of interstate commerce, specifically the mail and internet, for the purpose of preparing or furnishing consumer reports. As a CRA, Experian is aware of its obligations under the FCRA.

**MCM**

12.     **MCM** is a Kansas corporation with a principal address of 350 Camino De La Reina, Suite 300, San Diego, CA 92108.

13.     MCM is registered to conduct business in the State of Florida, where its Registered Agent is **Midland Funding, LLC, 13008 Telecom Dr., Suite 350, Tampa, FL 33637**.

### MCM is a Debt Collector

14.     MCM is a *Debt Collector* within the meaning of the FDCPA, 15 U.S.C. § 1692a(6) in that it uses an instrumentality of commerce, including the postal mail and / or telephone, interstate and within the State of Florida, for its business, the principal purpose of which is the collection of debts, and / or it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15.     MCM is registered with the Florida Office of Financial Regulation as a Consumer Collection Agency ("CCA,") holding license number CCA0900916.

16.     As a CCA, MCM is aware or should be aware of its obligations under the FCRA and the FDCPA.

### FACTUAL ALLEGATIONS

17.     In or around February 2020, Ms. Russian needed to finance dental work.

18.     While at her dentist's office, Ms. Russian opened a DentalFirst account issued through Comenity to finance the costs of her dental work.

19.     DentalFirst accounts can be used only to make charges at certain dental providers, like endodontists, periodontists, and orthodontists; it is not possible to charge amounts from non-dental providers to a DentalFirst account.

20.     Comenity later claimed $3,166 was owed by Ms. Russian (the "**Debt**").

21.    Comenity reported the Debt to Experian as a non-medical debt, despite the fact that the entire Debt stemmed from a medical procedure. **SEE PLAINTIFF'S EXHIBIT A.**

22.    Pursuant to the FCRA, the term "medical information" means "information or data, whether oral or recorded, in any form or medium, created by or derived from a health care provider or the consumer, that relates to … the provision of health care to an individual." *See* 15 USC 1681a(i)(1)(B).

23.    As the full amount of the purported Debt related to charges concerning the provision of health care to Ms. Russian, the Debt was "medical information" as defined by the FCRA.

24.    Experian, like the other major nationwide CRAs, requires furnishers of data like Comenity to report a "creditor classification code" ("CCC") which indicates the nature of the transaction.

25.    A total of 15 different CCCs exist in the Metro 2® reporting language, which is a *lingua franca* used by the major nationwide CRAs to create uniform reporting standards.

26.    A CCC of "02" means "medical/health care," and a CCC of "08" means "banking."

27.    Accounts reported with the "02" CCC are redacted and simply state "MEDICAL PAYMENT DATA" in reports that Experian furnishes to third parties.

28.     If a consumer applies for a mortgage guaranteed through the Federal Housing Administration ("FHA") or any other government agent, accounts reported with the "02" CCC are excluded from the consumer's debt-to-income ratios.

29.     Almost all commercially used credit scores, including most versions of FICO® as well as Vantage® credit scores, weight adverse information reported with an "02" CCC significantly less severely against the consumer than adverse information reported with any other CCC.

30.     As of July 1, 2022, the major CRAs also delete paid derogatory tradelines from a consumer's credit history if the CCC is reported as "02" to ensure that consumers are not unfairly harmed by paid medical debts which were previously derogatory.

31.     Additionally, the Consumer Financial Protection Bureau ("CFPB") issued a final rule on January 7, 2025, titled "Prohibition on Creditors and Consumer Reporting Agencies Concerning Medical Information (Regulation V)" which amends Regulation V, implementing the FCRA, to prohibit CRAs from including medical debt information on consumer reports and credit scores sent to lenders.

32.     In or prior to November 2024, Ms. Russian disputed Comenity's tradeline to Experian, stating the reported data was not accurate and that, amongst other issues, the account should be reported as a medical debt if reported at all, and described the details of the dental procedure.

33.    Experian sent Comenity an *Automated Consumer Dispute Verification* ("**ACDV**") request through a system known as e-OSCAR and asked Comenity to make a reasonable investigation into the dispute pursuant to the FCRA.

34.    When responding to an ACDV through e-OSCAR, the person sending the response must electronically sign to confirm as follows:

> [b]y submitting this ACDV, you certify that you have verified the accuracy of the data in compliance with all legal requirements, and your computer and/or manual records will be adjusted to reflect the changes noted.

35.    Comenity responded to the ACDV request, confirming its tradeline was correct and required no modification or deletion.

36.    Comenity simply updated the tradeline with the comment, "This item was updated from our processing of your dispute in Oct 2024." **SEE PLAINTIFF'S EXHIBIT B.**

37.    Comenity had no basis to conclude the Debt was not medical in nature since its business records clearly showed the Debt consisted of *only* medical debt.

38.     If a furnisher of data to a CRA, like Comenity, confirms disputed information as accurate, "the question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true." *Hinkle v. Midland Credit Management, Inc.* (11th Cir.) 827 F.3d 1295 (2016).

39.    The standard for judging the reasonableness of procedures "is what a reasonably prudent person would do under the circumstances." *Stewart v. Credit Bureau, Inc.,* 734 F.2d 47, 51 (D.C. Cir. 1984).

40.    Comenity is a large bank which receives thousands of ACDVs each month.

41.    To minimize costs, Comenity instructs its employees or contractors responding to ACDVs to quickly compare the information contained in the requesting CRAs file against Comenity's own internal records.

42.    On information and belief, Comenity does not authorize its employees/contractors to make any actual investigation at all, beyond a *de minimis* comparison of CRA records to Comenity's own records.

43.    For this reason, a consumer who disputes something specific about the data being reported – such as an incorrect CCC – will have her information confirmed as "accurate" simply because Comenity's own flawed records show as much, and, moreover, the employees/contractors answering the disputes are not trained to investigate disputes of this nature nor are they empowered to make such investigations.

44.    No objective, reasonable investigation was made; any reasonable investigation would have determined that the Debt should have been reported with a CCC of "02" meaning "medical/health care."

45.    This is especially true considering Comenity designed and implemented the DentalFirst credit program and was well-aware its own product could *only* be used for medical services.

46.    Additionally, after notice of dispute, Comenity was required to indicate the tradeline was disputed by the consumer, which it did not.

47.    Metro 2 contains 10 different "compliance condition codes" for data furnishers to notate accounts as disputed, previously disputed, and so on.

48.    When Comenity verified its information as accurate to Experian, it did not update its reporting to include any compliance condition codes to indicate that Ms. Russian disputed the Debt.

49.    Comenity should have reported the Debt with an indication of "account information disputed by consumer," which in Metro 2 is a compliance condition code of "XB."

50.    Reporting a debt as "disputed" is significant because many commercially-used credit scoring algorithms disregard (or weight less severely) a collection account reported as currently in dispute from their score computations.

51.    Comenity's failure to disclose that the Debt was currently being disputed materially damaged Ms. Russian's credit scores.

52.    Further, this failure to update reporting to indicate disputed information is disputed in and of itself violates the FCRA. *See Saunders v. Branch Banking and Trust Company of Virginia* 526 F.3d 142 (4th Cir. 2008); *Seamans v. Temple University*, 744

F.3d 853, 864 (3d Cir. 2014), (private cause of action arises under § 1681s-2(b) when, having received notice of a consumer's potentially meritorious dispute, furnisher subsequently fails to report that claim is disputed).

53.     Comenity's failure to report the Debt as disputed adversely impacted Ms. Russian's credit scores since the vast majority of consumer credit scores, including FICO, the most commonly-used credit scores in the country, exclude revolving credit accounts reported as "disputed."

54.     The failure to properly report a disputed debt *as disputed* creates a concrete injury-in-fact because the failure to disclose this information affects credit scores, meaning Ms. Russian suffered "a real risk of financial harm caused by an inaccurate credit rating." *Evans v. Portfolio Recovery Associates*, 889 F. 3d 337, 345 (7th Cir 2018).

55.     Comenity's failures were willful and intentional since they were the result of intentional policies put in place to minimize investigation costs, even though the accuracy of the investigations would be impaired.

56.     Ms. Russian made a second dispute to Experian regarding the Comenity tradeline in March 2025, reiterating in detail that the account should be reported as medical.

57.     As before, Comenity merely verified that its tradeline was accurate and again failed to note that the account was disputed by the consumer.

58.    As of the date of this filing, Comenity continues to report the Debt to Experian as a non-medical debt and an undisputed Debt.

**MCM's Reporting of the Debt**

59.    Sometime in 2022, Comenity or a successor in interest, sold or otherwise assigned the $3,166 Debt to MCM.

60.    Shortly thereafter, MCM started reporting the Debt to the major CRAs, including Experian. **SEE PLAINTIFF'S EXHIBIT C.**

61.    MCM reported the Debt as a non-medical debt to the CRAs.

62.    When it made its reports to the CRAs, MCM was well-aware what the nature of the underlying Debt was, as it had the original account statements in its possession from assignment.

63.    It is virtually axiomatic that a credit program called "DentalFirst" involves the financing of medical procedures.

64.    On June 28, 2024, MCM filed a lawsuit against Ms. Russian in Polk County, Florida (the "Lawsuit"), in an attempt to collect the Debt. **SEE PLAINTIFF'S EXHIBIT D.**

65.    The Lawsuit included in its exhibits a copy of the final billing statement related to the Debt, which was in MCM's possession. ***Id.***

66.    The statement clearly says "Dental" in large font:



*Id.*

67.     MCM knows or should know that dental work is considered a medical procedure, and as such, it is required to report it as such.

68.     On October 23, 2024, Ms. Russian disputed MCM's reporting of the Debt to Experian.

69.     Ms. Russian indicated in her dispute that the Debt consisted entirely of charges for a medical-related procedure and the tradeline should be updated to reflect as such, and included a detailed description of the nature of the dental work done.

70.     Experian's investigation consisted entirely of sending an ACDV request to MCM and asking it to make a reasonable investigation into the dispute.

71.     MCM returned the ACDV to Experian, verifying it had completed its investigation and that all of its information was accurate.

72.     Ms. Russian made a second dispute to Experian regarding the MCM tradeline in February 2025.

73.     MCM responded by confirming its reporting was "verified as accurate" and only updated the amount owed, which was now alleged to be $3,299.

74.    As of the date of this filing, neither the Comenity nor MCM tradeline has been updated to reflect that the underlying Debt is medical in nature. **SEE PLAINTIFF'S EXHIBIT E.**

### Experian Makes Unreasonable Investigations

75.    Experian has furnished reports about Ms. Russian to third parties – creditors, or potential creditors which included the Debt improperly reported as a non-medical debt, by both Comenity and MCM, and with the Comenity tradeline lacking a notation indicating the Debt was disputed.

76.    CRAs such as Experian are required to conduct their own investigations into a dispute from a consumer. *See* 15 U.S.C. § 1681i(a)(1)(A).

77.    On information and belief, rather than conduct its own independent reinvestigation, Experian, in response to the disputes received from Ms. Russian, merely relied on the dispute responses from both Comenity and MCM, blindly accepting the results and updating their reporting accordingly.

78.    Experian determined that the electronic verification of the tradeline by both Comenity and MCM – something requiring only a few clicks of a computer mouse – was somehow more persuasive evidence than anything proffered by Ms. Russian, even though Ms. Russian's disputes and version of events were far more probable than that of Comenity and MCM's. Moreover, even a cursory review of the DentalFirst website quickly reveals the product is a medical-only charge card.

79.     Additionally, the name of the card is DentalFirst, with "dental" in the name, and should be a clear indicator that the account was a medical-only charge card – facts which are readily and objectively verifiable.

80.     At the absolute minimum, Experian could not have believed that the Debt was *not* disputed by Ms. Russian, and Comenity's failure to report it as disputed should have been a red flag which indicated Comenity's reinvestigation was not reliable.

81.     Upon receipt of the ACDV responses, Experian utilized an automated system which made rudimentary checks of tradeline data between what Comenity and MCM reported and the data contained in Experian's own file on Ms. Russian, *e.g.*, her name, address, date of birth, and Social Security number.

82.     Such automated processes will not do anything to correct medical payment data reported as non-medical.

83.     For at least the last 40 years, courts in this district have recognized that a CRA cannot rely solely upon its data furnisher when the consumer provides proof questioning the reliability and accuracy of the data furnisher's representations.

84.     The CRA must make some independent investigation of its own. *See Swoager v. Credit Bureau of Greater St. Petersburg*, 608 F. Supp. 972 (M.D.Fla.1985) ("Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [data furnisher].").

85.     Experian was obligated to do more than merely send ACDVs to Comenity and MCM to investigate Ms. Russian's disputes because Ms. Russian had specifically highlighted the issue in her disputes, which included an account statement, among other details.

86.     Ms. Russian has hired the undersigned law firm to represent her in this matter and has assigned her right to fees and costs to such firm.

**COUNT I**
**COMENITY'S WILLFUL VIOLATIONS OF THE FCRA,**
**15 U.S.C. § 1681s-2(b)**

87.     Ms. Russian adopts and incorporates paragraphs 1 – 86 as if fully stated herein.

88.     Comenity violated **15 U.S.C. § 1681s-2(b)** when it failed, on multiple occasions, to conduct a reasonable investigation after notice of dispute from a CRA, as any reasonable investigation would have concluded the Debt – which was entirely medical in nature – should be reported with a CCC of "02" and, as such, Comenity's reported information was not accurate and complete without modification.

89.     Comenity violated **15 U.S.C. § 1681s-2(b)** when it failed to update, modify, or correct its reports after receiving notices of dispute from a CRA, Experian. Specifically, Comenity failed to modify its reporting to indicate the Comenity tradeline was disputed, when it was.

90.     The information Comenity reported and verified was clearly inaccurate, and indeed no reasonable investigations were actually conducted by Comenity.

91.     Comenity's actions were either willful and intentional or, alternatively, it acted with reckless disregard for its duties under the FCRA to make reasonable investigations.

92.     It is reasonably foreseeable that Comenity's actions and policies would cause Ms. Russian harm.

93.     Comenity's conduct caused Ms. Russian to suffer damages to her credit report and scores, as well as emotional distress in having to deal with an account being reported which she disputed to no avail.

94.     Accordingly, Comenity is liable, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Russian's actual damages or statutory damages of $1,000 per violation, plus punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Russian respectfully requests this Honorable Court to enter judgment in her favor, and against Comenity, for:

a.  The greater of Ms. Russian's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.  Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3); and,

d.  Such other relief that this Court deems just and proper.

**COUNT II**
**COMENITY'S NEGLIGENT VIOLATIONS OF THE FCRA,**
**15 U.S.C. § 1681s-2(b)**
**(Pled in the Alternative to Count I)**

95.    Ms. Russian adopts and incorporates paragraphs 1 – 86 as if fully stated herein and pled strictly in the alternative to Count I.

96.    Comenity violated **15 U.S.C. § 1681s-2(b)** when it failed, on multiple occasions, to conduct a reasonable investigation after notice of dispute from a CRA, as any reasonable investigation would have concluded the Debt – which was entirely medical in nature – should be reported with a CCC of "02" and, as such, Comenity's reported information was not accurate and complete without modification.

97.    Comenity violated **15 U.S.C. § 1681s-2(b)** when it failed to update, modify, or correct its reports after receiving notices of dispute from a CRA, Experian. Specifically, Comenity failed to modify its reporting to indicate the Comenity tradeline was disputed, when it was.

98.    Comenity received notice of a dispute multiple times from Experian.

99.    Comenity owed Ms. Russian a legal duty to conduct reasonable investigations upon receiving such notice.

100.    Comenity breached this duty when it failed, multiple times, to conduct a reasonable investigation.

101.    It is reasonably foreseeable that Comenity's actions and policies would cause Ms. Russian harm.

102.    Comenity's conduct caused Ms. Russian to suffer damages to her credit report and scores, as well as emotional distress in having to deal with an account being reported which she disputed to no avail.

103.    Comenity acted negligently, and is liable, pursuant to 15 U.S.C. § 1681o, for Ms. Russian's actual damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Russian respectfully requests this Honorable Court to enter judgment in her favor, and against Comenity, for:

a.  Ms. Russian's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.  Such other relief that this Court deems just and proper.

**COUNT III**
**MCM'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681s-2(b)**

104.    Ms. Russian adopts and incorporates paragraphs 1 – 86 as if fully stated herein.

105.    MCM violated **15 U.S.C. § 1681s-2(b)** when it failed, on multiple occasions, to conduct a reasonable investigation after notice of dispute from a CRA, as any reasonable investigation would have concluded the Debt – which was entirely medical in nature – should be reported with a CCC of "02" and, as such, MCM's reported information was not accurate and complete without modification.

106.    The information MCM reported and verified was clearly inaccurate, and indeed no reasonable investigations were actually conducted by MCM.

107.    MCM's actions were either willful and intentional or, alternatively, it acted with reckless disregard for its duties under the FCRA to make reasonable investigations.

108.    It is reasonably foreseeable that MCM's actions and policies would cause Ms. Russian harm.

109.    MCM's conduct caused Ms. Russian to suffer damages to her credit report and scores, as well as emotional distress in having to deal with an account being reported which she disputed to no avail.

110.    Accordingly, MCM is liable, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Russian's actual damages or statutory damages of $1,000 per violation, plus punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Russian respectfully requests this Honorable Court to enter judgment in her favor, and against MCM, for:

a.  The greater of Ms. Russian's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.  Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3); and,

d.  Such other relief that this Court deems just and proper.

## COUNT IV
## <u>MCM'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681s-2(b)</u>
### (Pled in the Alternative to Count III)

111.    Ms. Russian adopts and incorporates paragraphs 1 – 86 as if fully stated herein and pled strictly in the alternative to Count III.

112.    MCM violated **15 U.S.C. § 1681s-2(b)** when it failed, on multiple occasions, to conduct a reasonable investigation after notice of dispute from a CRA, as any reasonable investigation would have concluded the Debt – which was entirely medical in nature – should be reported with a CCC of "02" and, as such, MCM's reported information was not accurate and complete without modification.

113.    MCM received notice of a dispute multiple times from Experian.

114.    MCM owed Ms. Russian a legal duty to conduct reasonable investigations upon receiving such notice.

115.    MCM breached this duty when it failed, multiple times, to conduct a reasonable investigation.

116.    It is reasonably foreseeable that MCM's actions and policies would cause Ms. Russian harm.

117.    MCM's conduct caused Ms. Russian to suffer damages to her credit report and scores, as well as emotional distress in having to deal with an account being reported which she disputed to no avail.

118.    MCM acted negligently, and is liable, pursuant to 15 U.S.C. § 1681o, for Ms. Russian's actual damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Russian respectfully requests this Honorable Court to enter judgment in her favor, and against MCM, for:

a.  Ms. Russian's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.  Such other relief that this Court deems just and proper.

### COUNT V
### EXPERIAN'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681i(a)(1)(A)

119.    Ms. Russian adopts and incorporates paragraphs 1 – 86 as if fully stated herein.

120.    Experian violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed, on multiple occasions, to conduct a reasonable reinvestigation into disputes from Ms. Russian regarding the Debt, since any reasonable investigation would have concluded that the Debt was medical in nature, or at the very least, that the Debt was disputed.

121.    Experian's conduct was a result of its regular policies and procedures, which outsource investigations to its data furnishers.

122.    Experian's conduct was willful and intentional, or, alternately, Experian acted with reckless disregard for its duties under the FCRA to investigate consumer disputes.

123.    Experian is thus liable, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Russian's actual damages and statutory damages of up to $1,000 for *each occurrence*, plus punitive damages, reasonable attorneys' fees and costs.

**WHEREFORE,** Ms. Russian respectfully requests this Honorable Court to enter judgment against Experian for:

a. The greater of Ms. Russian's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d. Such other relief that this Court deems just and proper.

## COUNT VI
## EXPERIAN'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681i(a)(1)(A)
### (Pled in the Alternative to Count V)

124.    Ms. Russian adopts and incorporates paragraphs 1 – 86 as if fully stated herein and strictly pled in the alternative to Count V.

125.    Experian violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed, on multiple occasions, to conduct a reasonable reinvestigation into disputes from Ms. Russian regarding the Debt, since any reasonable investigation would have concluded the Debt was medical in nature, or at the very least, that the Debt was disputed.

126.    Experian owed Ms. Russian a legal duty to conduct reasonable investigations upon receiving notice that Ms. Russian disputed the Comenity and MCM tradelines, on multiple occasions.

127.    Experian breached this duty when it failed, multiple times, to conduct a reasonable investigation.

128.    Experian's conduct was negligent, and Experian is liable, pursuant to 15 U.S.C. § 1681o, for Ms. Russian's actual damages, reasonable attorneys' fees and costs.

**WHEREFORE,** Ms. Russian respectfully requests this Honorable Court to enter judgment against Experian for:

a.  Ms. Russian's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.  Such other relief that this Court deems just and proper.

**COUNT VII**
**MCM'S VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e**

129.    Ms. Russian adopts and incorporates paragraphs 1 – 86 as if fully restated herein.

130.    MCM violated **15 U.S.C. § 1692e** by making false and/or deceptive representations in connection with the collection of a debt when MCM failed to report the Debt as a medical debt, instead reporting it specifically as non-medical.

131.    MCM's actions render it liable for the above-stated violations of the FDCPA, and Ms. Russian is therefore entitled to statutory damages not to exceed $1,000.00 as well as other relief.

**WHEREFORE,** Ms. Russian respectfully requests this Honorable Court to enter judgment against MCM and for her as follows:

a.    Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.    Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.    Such other relief that this Court deems just and proper.

### COUNT VIII
### MCM'S VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e(10)

132.    Ms. Russian adopts and incorporates paragraphs 1 – 86 as if fully restated herein.

133.    MCM violated **15 U.S.C. § 1692e(10)** by making false and/or deceptive representations in connection with the collection of a debt when MCM failed to report that the Debt consisted entirely of medical debt, instead reporting it specifically as non-medical.

134.    MCM's actions render it liable for the above-stated violations of the FDCPA, and Ms. Russian is therefore entitled to statutory damages not to exceed $1,000.00 as well as other relief.

**WHEREFORE,** Ms. Russian respectfully requests this Honorable Court to enter judgment against MCM and for her as follows:

a.    Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.    Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.    Such other relief that this Court deems just and proper.

## COUNT IX
## <u>MCM'S VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e(2)(a)</u>

135.    Ms. Russian adopts and incorporates paragraphs 1 – 86 as if fully restated herein.

136.    MCM violated **15 U.S.C. § 1692e(2)(a)** when it made a false representation about the character, amount, and/or legal status of a debt when MCM it failed to report that the Debt consisted entirely of medical debt, instead reporting it specifically as non-medical.

137.   MCM's actions render it liable for the above-stated violations of the FDCPA, and Ms. Russian is therefore entitled to statutory damages not to exceed $1,000.00 as well as other relief.

**WHEREFORE,** Ms. Russian respectfully requests this Honorable Court enter judgment against MCM and for her as follows:

a.    Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.    Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.    Such other relief that this Court deems just and proper.

**COUNT X**
**MCM'S VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e(8)**

138.   Ms. Russian adopts and incorporates paragraphs 1 – 86 as if fully restated herein.

139.   MCM violated **15 U.S.C. § 1692e(8)** when it communicated credit information which it knew, or should have known, was false, to wit, that the Debt was a non-medical debt, even though MCM knew the Debt was entirely medical in nature and was thus required to be reported as such.

140.    MCM's actions render it liable for the above-stated violations of the FDCPA, and Ms. Russian is therefore entitled to statutory damages not to exceed $1,000.00 as well as other relief.

**WHEREFORE,** Ms. Russian respectfully requests this Honorable Court enter judgment against MCM and for her as follows:

a. Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b. Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d. Such other relief that this Court deems just and proper

## **JURY TRIAL DEMANDED**

Ms. Russian hereby demands a jury trial on all issues so triable.

Respectfully submitted on March 28, 2025, by:

**SERAPH LEGAL, P.A.**

*/s/ Brandon D. Morgan*
Brandon D. Morgan, Esq.
Florida Bar Number: 1015954
BMorgan@SeraphLegal.com
Thomas M. Bonan, Esq.
Florida Bar Number: 118103
TBonan@SeraphLegal.com
2124 W. Kennedy Blvd., Suite A
Tampa, FL 33606
Tel: 813-567-1230
Fax: 855-500-0705
*Counsel for Plaintiff*

**ATTACHED EXHIBIT LIST**

A    Ms. Russian's Experian Consumer Disclosure, October 22, 2024, Comenity Tradeline – Excerpt

B    Ms. Russian's Experian Consumer Disclosure, January 24, 2025, Comenity Tradeline - Excerpt

C    Ms. Russian's Experian Consumer Disclosure, October 22, 2024, MCM Tradeline

D    MCM's Lawsuit - Excerpts

E    Ms. Russian's Experian Consumer Disclosure, March 25, 2025 – MCM and Comenity Tradelines - Excerpt